STATE OF WEST VIRGINIA

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.M.,**

**No. 19-0548** (Randolph County 2018-JA-127)

## MEMORANDUM DECISION

Petitioner Father K.H., by counsel Steven B. Nanners, appeals the Circuit Court of Randolph County's May 16, 2019, order terminating his parental rights to J.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Melissa T. Roman, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for an improvement period and terminating his parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2018, the DHHR filed an abuse and neglect petition against petitioner and J.M.'s mother due to petitioner's prior involuntary termination of parental rights to an older child in July of 2018 and the mother's inability to "provide necessary safety and supervision of the child." The petition alleged that the parents' conduct constituted an imminent danger to the child because of petitioner's "violent and abusive" behavior to the mother during their relationship. The petition further alleged that in June of 2018, when the mother was five months pregnant with J.M., petitioner "engaged in a very serious domestic attack" against her and the then-unborn child. Specifically, petitioner used "a piece of a door jam that had a nail in it" while "he was fairly

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

inebriated" to strike the mother repeatedly, resulting in her hospitalization. On October 19, 2018, the circuit court held a preliminary hearing and ratified the child's removal from petitioner's custody. Criminal charges were pending against petitioner at the time of the hearing, and he was later convicted of unlawful assault for the attack. He then remained incarcerated throughout the remainder of the proceedings. He was, however, represented by counsel at all stages of the underlying proceedings.

At the adjudication hearing in March of 2019, the circuit court took judicial notice that petitioner's parental rights to an older child were terminated in July of 2018 and that petitioner had pled guilty to unlawful assault for his attack on the mother and the unborn child and was awaiting sentencing. With the prior termination of petitioner's parental rights and the new conviction for unlawful assault, the circuit court found there to be "aggravated circumstances." Based upon petitioner's continued violent behavior and aggravated circumstances, the circuit court found that petitioner failed to remedy the conditions of abuse and neglect from the prior termination and adjudicated him as an abusing and neglecting parent.

The circuit court held a final dispositional hearing in April of 2019. At the hearing, petitioner requested a less-restrictive dispositional alternative, but the circuit court denied the request. The circuit court considered petitioner's prior termination of parental rights; his substance abuse; his history of anger management problems and domestic violence; and his inability to care for the child. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, and that it was in the best interest of the child to terminate petitioner's parental rights. Accordingly, the court terminated petitioner's parental rights by its May 16, 2019, order.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]J.M.'s mother successfully participated in an improvement period and was reunified with J.M. As such, the permanency plan has been achieved by placement of J.M. in her care.

On appeal, petitioner alleges that the circuit court erred in denying his motion for a post-adjudicatory improvement period. Notably, petitioner does not argue that the circuit court's finding that "multiple aggravated circumstances exist" was clearly erroneous. Instead, petitioner acknowledges that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

In support of his motion for an improvement period, petitioner argued that he would have improved through counseling and treatment provided by the Division of Corrections and Rehabilitation during his incarceration and additional counseling from the DHHR once released from incarceration. In light of these speculative improvements, he argues that the circuit court should have granted him a post-adjudicatory improvement period. He asserts "he could [have] compl[ied] with the issues raised." Namely, "any drinking issues could [have] be[en] addressed with counseling, [and] anger issues could [have] be[en] addressed with anger management counseling."

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). While petitioner contends that nothing precluded the circuit court from granting him an improvement period in this case, there is no evidence he would comply with an improvement period. Accordingly, we find no error in the circuit court's denial of his motion.

Next, petitioner alleges that the circuit court erred in terminating his parental rights. In support, petitioner claims that the circuit court failed to make any specific findings as to whether the conditions of neglect could be substantially corrected in the near future. Petitioner argues that the circuit court's termination of his rights was premature as he "has demonstrated he would comply with an [i]mprovement [p]eriod." Further, petitioner alleges a less-restrictive dispositional alternative should have been imposed pursuant to West Virginia Code § 49-4-604(b)(5), which provides, in part,

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, [a circuit court may] commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

The evidence, however, supports the termination of petitioner's parental rights.

West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the

3

child. Additionally, pursuant to West Virginia Code § 49-4-604(c) "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

With these parameters in mind, the record supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given his untreated alcohol addiction and anger management issues. While it is true that petitioner may be able to undergo some treatment in the future for his substance abuse and anger management, such possible improvement was based on pure speculation. Petitioner claims that he should have been granted a less-restrictive disposition because he might eventually be able to correct the conditions of abuse and neglect, but we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). As such, it is clear in the circuit court's findings that there was no reasonable likelihood the conditions of abuse and neglect could have been substantially corrected in the near future and that termination was necessary for the child's welfare.

While petitioner argues that the circuit court should have employed a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the decision of the circuit court, and its May 16, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison